<u>**NOT FOR PUBLICATION**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE**

|  |  |  |
|---|---|---|
| Daniel Young, | : | |
| | : | Civil Action No. 15-4253(SRC) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| | : | |
| Shannon Emmanuel, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHESLER**, District Judge:

Plaintiff is a civilly committed person under New Jersey's Sexually Violent Predator Act ("SVPA"), confined at East Jersey State Prison, Special Treatment Unit ("STU"). (Compl., ECF No. 1.) Plaintiff filed a civil rights Complaint in this Court on June 23, 2015, and submitted an addendum containing his medical records on July 9, 2015. (ECF No. 3.) Plaintiff alleges that Defendant employees of the Department of Human Services improperly made the decision to, or approved recommendations to, place Plaintiff on treatment refusal status, demote him to Phase 1 of treatment, and take away his privilege of institutional employment, notwithstanding the fact that Plaintiff's failure to attend treatment was caused by his inability to walk. This matter is

1

before the Court upon Defendants' motion to dismiss or alternatively for summary judgment, arguing that Defendant Emmanuel's decision to place Plaintiff on treatment refusal status was a reasonable exercise of professional judgment, and that the remaining supervisory-level Defendants were not sufficiently involved with the decision to incur liability. (ECF No. 13.) Defendants further argue that no liability should attach because they are entitled to qualified immunity. (Id.) The Court has considered the papers filed by the parties and for the reasons that follow will GRANT Defendants' motion.

I.   BACKGROUND

Young has been committed under the SVPA since 2002. In accordance with the Act, he has been undergoing treatment and has progressed to "Phase 3A." (ECF No. 1 at 18.) In his Complaint, Plaintiff alleges that Defendants improperly stopped his treatment, moved him to South Unit where no modules were conducted, and set him back to "Phase 1" as punishment for his failure to attend treatment, even though they knew that his absences were due to his inability to walk. (Id. at 17-18.) According to Plaintiff, Defendant social worker Shannon Emmanuel instructed the treatment team to place him on treatment refusal status although she knew about the seriousness of his medical condition, yet forced him to continue to walk to group. (Id. at 3.) Defendant Jacylen Ottino, program coordinator, likewise placed Plaintiff on treatment

2

refusal, disregarding the swelling of his feet and legs. (<u>Id.</u> at 4.) Defendant Shantay Adams approved of the placement and Defendant Merril Main made the final decision to stop Plaintiff's treatment and place him on treatment refusal status. (<u>Id.</u> at 4-5.)



Plaintiff's foot problems limited his attendance at treatment. According to Young's Annual Treatment Progress Review Committee Report ("TPRC Report") dated May 18, 2015,[1] Plaintiff was initially excused from group on account of his mobility issues, but the excuse ended when "the medical department...determined

---

[1] Plaintiff submitted select pages from this report. Defendants provided the document in its entirety with their motion to dismiss. (Main Cert., ECF No. 13-2, ¶9 and Ex. DY06-DY24.)

that [Young] did not require [walking] assistance[.]" (ECF No. 1 at 14.) Young "started attending groups again, but stopped after a couple [of] weeks." (Id.) The report further provides that Young "firmly believed he needed a wheelchair or walker," and "reported that he would not attend group without a walking aid.... Since [he] was not prescribed a wheelchair or walker by the medical staff, he stopped attending [group]." (Main Cert. at DY12.) Plaintiff was thus placed on treatment probation status "for failing to attend his process group," effective October 24, 2014. (Id.) Plaintiff's treatment notes, cited in the TPRC Report, state that Plaintiff was required to attend all scheduled groups with at least 90% attendance, constructively participate in all scheduled groups, and meet other objectives  (Id.) When Plaintiff failed these goals, he was placed on treatment refusal status on December 3, 2014. (Id.; ECF No. 1 at 17.)

Plaintiff alleges that he attempted to walk to group, but his feet and legs became swollen because of his efforts, and he was admitted to the hospital on December 30, 2014. (ECF No. 1 at 4.) Plaintiff's TPRC report, citing a March 25, 2015, interview with Young, notes that Plaintiff was provided with a wheelchair in January 2015 and "plans to return to group if he is able to get around." (Main Cert. at DY14-15.) Nevertheless, Young's progress notes indicate that he has not returned to treatment. (Id. at DY14.)

4

In a February 26, 2015, Multidisciplinary Treatment Team Report, Young's treatment team recommended demoting him to Phase 1 of treatment. (Id. at DY12.) As summarized in the TPRC Report, the treatment team noted that "[i]n early October 2014, [Young] stopped attending his process group and, when assigned to a Treatment Orientation group, stopped engaging in groups altogether." (Id.) "As a result of his TR status, he is not currently attending any modules or self-help groups." (Id. at DY 14.) The treatment team recommended that Young should "[r]e-engage in treatment," "[w]hen appropriate...request to be reintegrated into a CLS process group," "[p]articipate in process group," resume educational programming, participate in recreational programming, and have a psychiatric referral. (Id.)

The Treatment Progress Review Committee, based on a review of Young's treatment notes and reports, communication with members of Young's treatment team, interview of Young, and a review of other available material included in Plaintiff's STU file concluded that "[s]ince his commitment to the STU, Mr. Young has made minimal progress in treatment." (Id. at DY19.) Assessing the quality of Young's engagement, the Committee noted that it was limited:

> [a]lthough he has regularly attended his process groups, he has been described as minimally participating in treatment with limited knowledge of treatment concepts or insight regarding his offending dynamics or deviant arousal.... Although some small improvements were noted after he was placed in

> a Cognitive Life Skills process
> group...overall, he did not appear motivated
> to meaningfully engage in treatment, address
> his treatment issues, or make any meaningful
> changes....

(Id.) The Committee acknowledged that Young has made some progress:

> During the 2014 review period, Mr. Young
> demonstrated significant improvement
> regarding his engagement in treatment, as well
> as his ability to regulate his emotions and
> maintain adequate behavioral control....[H]e
> showed...a genuine desire to make progress in
> treatment. As a result of his increased
> engagement..., emotion regulation, and
> behavioral control, he was advanced to Phase
> 3A of treatment.

(Id. DY20-21.) However, as of October 2014, Plaintiff's engagement

in treatment ceased:

> Mr. Young began the current review period by
> consistently attending and participating in
> his CLS process group.... Unfortunately, he
> stopped attending group in October 2014
> because, according to him, he was having
> trouble walking and required a walker or
> wheelchair. However, the medical department
> determined that he did not require any
> assistance to walk. He subsequently started
> using a wheelchair and recently began using a
> walker, but has not returned to group.

(Id. at DY21.) Consequently, the Committee unanimously affirmed

Young's treatment team's recommendations to demote Plaintiff to

Phase 1 of treatment. (Id. at DY06.) As a result, Plaintiff lost

his institutional job, which is "a privilege at the Special

Treatment Unit...awarded [for] cooperation in treatment." (ECF No.

1 at 10, 17-18.)

II.  STANDARD OF REVIEW

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint." Id. A court need not accept legal conclusions as true. Id. Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents." <u>Mayer v.</u>
<u>Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (citing <u>Pension Benefit</u>
<u>Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir.
1993)). Here, Plaintiff's claims are based in part on his May 18,
2015, TPRC Report, several pages of which he attached to the
Complaint. Merrill Main, the Clinical Director of the Special
Treatment Unit where Plaintiff is committed, authenticated the May
18, 2015, TPRC Report as custodian of records for the STU and
submitted a complete copy. (Certification of Merrill Main, ¶¶8-
12, Ex. DY06-24.) Therefore, in considering Defendants' motion to
dismiss for failure to state a claim under Federal Rule of Civil
Procedure 12(b)(6), the Court will consider the Complaint,
Plaintiff's addendum of medical records, and the complete May 18,
2015 TPRC Report.

III. DISCUSSION

    A.   RIGHT TO TREATMENT

    Plaintiff alleges a violation of his federal constitutional
rights by state actors. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State..., subjects, or causes to be
> subjected, any citizen of the United States or
> other person within the jurisdiction thereof
> to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and
> laws, shall be liable to the party injured in
> an action at law, suit in equity, or other
> proper proceeding for redress....

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Although Plaintiff invokes his Eighth Amendment right to treatment, as a civilly committed sexually violent predator under the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 et seq., his right to receive sex offender treatment comes from the Fourteenth Amendment Due Process Clause. See Leamer v. Fauver, 288 F.3d 532, 545 (3d Cir. 2002)(holding that New Jersey's unique former statutory scheme for sex offenders, that predicated the term of sentence on a prisoner's response to treatment, created fundamental and cognizable liberty interest in treatment). While Leamer was not a civilly committed sex offender, his confinement and treatment were inextricably linked pursuant to the statute. Because the SVPA similarly predicates the length of confinement on treatment response, the Third Circuit's holding in Leamer clearly extends to an involuntarily committed sex offender under the SVPA. See N.J.S.A. 30:4-27.34(b) ("The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act. Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); N.J.S.A. 30:4-

27.36(a) ("At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status."). Therefore, Young has a cognizable liberty interest in sex offender treatment under the Fourteenth Amendment.

    B.   QUALIFIED IMMUNITY DEFENSE

Defendants assert they are entitled to qualified immunity against Plaintiff's claims because:

> [N]o reasonable state official would know that placing plaintiff on treatment refusal status after (i) the medical department determined that he did not need assistance to walk, and (ii) plaintiff failed to return to treatment even after the doctor provided him with a wheelchair and later a walker...[would violate the Constitution.]

(Defs' Br., ECF No. 13-3 at 31.)

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A right can be clearly established under

precedent of a Circuit Court of Appeals. See, e.g., Mammaro v. New Jersey Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016). Qualified immunity is immunity from suit, and should be resolved as early as possible. Pearson, 555 U.S. at 231-32. It protects from suit "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

There are two steps for resolving qualified immunity claims, but the steps may be addressed in any sequence. Pearson, 555 U.S. at 242 (citing two-step test in Saucier v. Katz, 533 U.S. 194 (2001)). In other words, courts need not first determine whether the facts alleged by the plaintiff state a violation of a constitutional right before addressing whether such a right was clearly established at the time of the defendant's alleged misconduct. Id.

A defendant has not violated a clearly established right unless the contours of that right were "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating [the right.]" Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014) (citing al-Kidd, 563 U.S. at 741.) Stated another way, "'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" Id. (quoting al-Kidd, 563 U.S. at 741.) Furthermore, courts should not define clearly established law "at

a high level of generality" because to do so avoids the question of whether the official acted reasonably in the particular circumstances. Id.

There is a clearly established constitutional right, under Third Circuit precedent, to treatment for civilly committed sex offenders whose ultimate release depends on progress in treatment. See Leamer, 288 F.3d at 545 (New Jersey's unique former statutory scheme for sex offenders created fundamental and cognizable liberty interest in treatment.) This, however, is a generally defined right to treatment.

Here, Defendants did not deprive Plaintiff of all opportunities for treatment, but imposed sanctions for Plaintiff's failure to attend based on determinations made by the medical department regarding Plaintiff's condition. Plaintiff's STU documents indicate that his absences were excused until the medical department determined that he did not require walking assistance. Only then was Plaintiff placed on treatment probation, and subsequently, after continued absences, on treatment refusal status. Even if, after being cleared, Plaintiff's condition deteriorated and again impeded his ability to walk, Young was subsequently provided with a wheelchair and then a walker, but still did not return to treatment. Under these circumstances, there is no clearly established precedent that would have alerted

reasonable officials in Defendants' shoes that they were violating Plaintiff's constitutional rights.

Plaintiff also alleges that Defendants violated his rights by taking away his job assignment based on his treatment refusal status. (Compl., ECF No. 1 at 9-10.) STU jobs are a privilege awarded for cooperation in treatment. The loss of employment is a collateral consequence of failure to attend. There is no independent right of a civilly committed sex offender to maintain institutional employment. Therefore, Defendants are entitled to qualified immunity on Plaintiff's claims.

III. CONCLUSION

For the reasons discussed above, in the accompanying Order filed herewith, the Court will GRANT Defendants' motion to dismiss the Complaint.

s/Stanley R. Chesler
**STANLEY R. CHESLER**
**UNITED STATES DISTRICT JUDGE**